```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

**MELODY GARNER,**

        Plaintiff,

  vs.                                     Civil Action 2:11-CV-676
                                              Judge Graham
                                              Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner
of Social Security,**

        Defendant.

**REPORT AND RECOMMENDATION**

**I.
Introduction and Background**

      This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 13, and the Commissioner's *Memorandum in Opposition*, Doc. No. 18.

      Plaintiff Melody Garner filed her application for benefits on June 4, 2007, alleging that she has been disabled since June 1, 2005, as a result of rheumatoid arthritis, anxiety, depression and a pinched nerve. *PAGEID* 175-77, 241. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      A hearing was held on March 19, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Carl W. Hartung, who testified as a vocational expert. In a decision dated April 28, 2010, the administrative law judge concluded that plaintiff is able to perform a reduced range of light work despite her severe impairments and is therefore not disabled within the meaning of the Social Security Act. *PAGEID* 43-61. That decision

became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 22, 2011. *PAGEID* 32-35.[1]

Plaintiff was 53 years of age at the time the administrative law judge issued her decision. She has a tenth grade, "limited" education and claims past relevant work experience as a baker's helper, store laborer and welder. *PAGEID* 59, 195, 199, 228, 252.

## II.

### Plaintiff's Testimony[2]

Plaintiff testified at the administrative hearing that she lives alone but that her son stops by every other day. *PAGEID* 83. She smokes approximately five cigarettes and drinks approximately two ounces of beer per week. *PAGEID* 84-85. After initially denying the use of illegal drugs, plaintiff admitted to some use of marijuana, *PAGEID* 85-86, and a remote history of cocaine use. *PAGEID* 85. Plaintiff testified that she left her last job because the company went out of business. *PAGEID* 87.

Plaintiff testified to constant pain in her low back, arms, legs and left hand. *PAGEID* 94, 97. Plaintiff uses narcotic pain medication, *PAGEID* 101-02, and a pain cream. *PAGEID* 99.

Plaintiff estimated that she can sit for no more than 25 minutes and stand for 15 minutes. *PAGEID* 96. She cannot make a fist or lift even a half gallon of milk with her left hand. *Id.* She can lift five to 10 pounds if she uses both hands. *PAGEID* 97. She stopped babysitting her small grandchildren in June 2009 as a result of her physical limitations. *PAGEID* 98-99.

---

[1] Plaintiff asserts that a subsequent application for supplement security income was granted, effective May 24, 2010. *Statement of Errors*, p. 3.

[2] Because resolution of the issues presented in this case do not turn on the vocational expert's testimony, the Court will not summarize that testimony presented at the administrative hearing.

Plaintiff also testified to suffering from depression. *PAGEID* 91-94.  As a result of her mistrust of others, she has difficulty interacting with people.  She takes Zoloft, Ambien and Lorazepam for anxiety and depression. *PAGEID* 101-02.

As to her daily activities, plaintiff testified that she is able to maintain her personal hygiene and grooming. *PAGEID* 103. She maintains her own household, makes the bed, prepares meals, washes dishes, irons, dusts, vacuums and goes grocery shopping. *PAGEID* 103-04. On a typical day, she watches television or takes a nap. *PAGEID* 105.  She sees her boyfriend and his mother regularly. *PAGEID* 106, 116.

### III.

### The Medical Evidence of Record.

#### Physical Impairments

Plaintiff treated at Angel Health Care/Main Street MedCenter from May 2004 through October 2006 for complaints of pain in her left hip and leg, radiating low back and neck pain. *PAGEID* 358-96.  Clinical examination revealed tenderness in her legs and decreased lumbar range of motion. *PAGEID* 377-84, 392.

Plaintiff presented to the emergency room in September 2006 for chronic low back pain radiating into her right leg. *PAGEID* 336-43.  She had been seen for the same problem 3 days earlier but had left against medical advice. *PAGEID* 343, 344-46. Plaintiff reported that she had run out of her medications two months earlier. *PAGEID* 343, 345. She denied using illicit drugs. *PAGEID* 338. Plaintiff's examination was essentially normal.  She was diagnosed with back pain, not otherwise specified, and sciatica.  She was provided medication.  *PAGEID* 338-39.

In October 2006, plaintiff presented to the emergency room for low back pain. *PAGEID* 493-98. Examination revealed diffuse back tenderness in the lumbar paraspinal musculature. Neurologic examination was normal and straight leg raising was negative.

*PAGEID* 497. Plaintiff was diagnosed with chronic low back pain and degenerative joint disease. She was given prescriptions for a muscle relaxant, a NSAID and a steroid. *PAGEID* 498.

Lynne Torollo, Ph.D., M.D., completed a basic medical form in October 2006. *PAGEID* 427-28. She diagnosed low back pain, right arm pain, left leg pain and depression. Dr. Torollo opined that plaintiff was limited to lifting/carrying up to 20 pounds occasionally and 10 pounds frequently, with no limitations in her ability to sit, stand or walk. *PAGEID* 428. Dr. Torollo concluded that plaintiff was employable. *Id.*

Plaintiff returned to the emergency room on November 22, 2006, with complaints of ongoing low back pain. *PAGEID* 369-70. She was given a prescription for Vicodin.

In February 2007, plaintiff visited the emergency room for acute exacerbation of her chronic lumbosacral strain after running out of her medications. *PAGEID* 448-49. Examination revealed diffuse lumbosacral tenderness, but her neurological examination was normal and she had full range of motion in the extremities. *Id.* She was given a prescription for pain medication. *Id.*

Vernon Williams, M.D., was plaintiff's primary care physician from November 2006 until at least February 2009. *PAGEID* 462-80, 504-75, 613-15. 716-45, 844-51. Dr. Williams regularly described plaintiff as alert and cooperative with a normal gait. *PAGEID* 467-68, 471-73, 478, 509-11, 732, 740, 744-45. Dr. Williams recommended over-the-counter medications for her pain complaints. *Id.* In March 2007, Dr. Williams examined plaintiff for complaints of low back pain, numbness in her lower extremities and pain in her hands. Examination revealed muscle spasm and tenderness, with a positive straight leg raising on the left. *PAGEID* 475-76. A May 2007 MRI of plaintiff's lumbar spine revealed mild degenerative changes in the lower lumbar region, predominately involving the

4

facet joints of L3-4 and L4-5. *PAGEID* 483. A June 2007 MRI of the left shoulder demonstrated tendinosis, a small supraspinatus tendon tear, and subacromial subdeltoid bursitis. *PAGEID* 541.

Plaintiff presented to the emergency room for back pain after running out of pain medications on June 19, 2007. *PAGEID* 450-51. Musculoskeletal examination revealed paraspinal tenderness around L1-L3. *PAGEID* 451. On examination, which was characterized as benign, *id.*, plaintiff demonstrated a good range of motion and straight leg raising was within normal limits. Her mood and affect were appropriate. Plaintiff was provided Vicodin, ibuprofen and prednisone. *Id.*

On June 23, 2007, plaintiff presented to the emergency room with multiple forearm lacerations and a tendon laceration of the left index finger. *PAGEID* 453-54. On July 16, 2007, plaintiff underwent surgical repair of the extensor tendon of the second finger of her left hand. *PAGEID* 582-83. Three days after surgery, Dr. Williams noted that plaintiff had not yet filled her prescription medication for her hand injury. *PAGEID* 468. Plaintiff removed her splint against medical advice, an action that, according to the surgeon, "likely disrupted the tendon repair." *PAGEID* 698. In December 2007, the surgeon instructed plaintiff to return in two weeks, but plaintiff did not follow up until March 2008. *PAGEID* 696-97. Plaintiff underwent extensor tenolysis and MP capsulotomy in March 2008, *PAGEID* 675-76, following which plaintiff was instructed to complete hand therapy, which she failed to do. *PAGEID* 665-67, 698, 701, 705-06. During a November 2008 emergency room examination, plaintiff exhibited good flexion and extension of all fingers and thumb. *PAGEID* 842.

In June 2007, Dr. Williams completed a physical capacity evaluation. *PAGEID* 458-59. He opined that plaintiff could sit for 30 minutes at a time, for only a total of 40 minutes throughout a workday; she could stand/walk for 20 minutes at a time, for only a

5

total of 30 minutes in a workday; she could lift two pounds occasionally and one pound frequently. Plaintiff would also require additional breaks and a sit/stand option.  According to Dr. Williams, plaintiff could only occasionally balance and engage in gross manipulation and could rarely or never perform other postural activities, reach, handle, feel, push/pull or engage in fine manipulation.  Dr. Williams stated that these limitations were based on plaintiff's bilateral hip pain, lumbar degenerative changes, left shoulder tendinitis with tear and left hand tendon damage.

Plaintiff presented to the emergency room in August 2007, complaining of thoracic and low back pain. *PAGEID* 579-81.  She reported that she had no medicine. *Id.* Plaintiff was given Flexeril and Naprosyn. *PAGEID* 581. When seen by Dr. Williams the following month, plaintiff reported that she had misplaced her prescriptions for Vicodin and muscle relaxants. *PAGEID* 511.

In November 2007, the record was reviewed by state agency physician William Bolz, M.D., who opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday. *PAGEID* 617. Plaintiff could engage in postural activities only occasionally, except that she could frequently balance and could never climb ladders, ropes or scaffolds. *PAGEID* 618.  She could only occasionally engage in overhead lifting on the left side because of shoulder problems. *PAGEID* 619. Dr. Bolz concluded that Dr. Williams' June 2007 opinion was not consistent with the totality of the medical evidence. *PAGEID* 622.  Dr. Bolz's assessment was affirmed by state agency physician Gerald Klyop, M.D., in May 2008. *PAGEID* 655.

In May 2008, Dr. Williams completed a second physical residual functional capacity evaluation. *PAGEID* 651-52. According to Dr. Williams, plaintiff's low back pain and fatigue limited

plaintiff to lifting/carrying one to two pounds occasionally, standing/walking for a total of three hours in a workday, for 30 minutes at a time, and sitting for a total of four hours in a workday, for one hour at a time. *PAGEID* 651. She could never climb or crouch, could rarely stoop and only occasionally balance.  She could rarely handle, push/pull, or engage in fine manipulation and could occasionally reach, feel and engage in gross manipulation as a result of lost strength and agility to the left hand. *PAGEID* 652.

      An August 2008 musculoskeletal examination was normal. *PAGEID* 740.  In February 2009, Dr. Williams noted that Tramadol helped plaintiff's arthritis and Flexeril helped her intermittent muscle spasms.  Her anxiety and depression were "presently stable," and she felt "much better" when she took Busperal and Citalopram. *PAGEID* 845. On clinical examination, Dr. Williams noted decreased range of motion in the left arm, decreased strength in the hands and lumbar muscle spasms. *PAGEID* 844.

      The record also contains treatment notes from the Livingston Lockbourne Avenue Health Center dating from January 2009 though February 2010. *PAGEID* 859-94, 910-20. Treatment notes indicate that plaintiff frequently exhibited normal range of motion without tenderness or swelling in her extremities. *PAGEID* 863, 869, 873, 877, 881, 893.

      On November 2, 2009, plaintiff presented to the emergency room with complaints of radiating left shoulder pain. *PAGEID* 904-06. An x-ray of plaintiff's left shoulder was within normal limits. *PAGEID* 901. She was diagnosed with left shoulder degenerative joint disease and given medication.  *PAGEID* 905.

      An x-ray of plaintiff's cervical spine taken on March 24, 2010 documented

> [r]eversal of the usual cervical lordosis. . . . This certainly could represent muscle spasm. However, it could also be caused by the degenerative disc disease which she definitely

> has. Chronic cervical disc disease is apparent at C5-C6, C6-C7, and C7-T1. To a lesser extent degenerative disc disease can also be seen at C4-C5. At any rate, at C5-T1, there is disc space narrowing, end plate sclerosis, and both anteriorly and to a lesser extent posteriorly directed osteophytes. The frontal view demonstrates uncovertebral arthrosis at C5-C6 and to a lesser extent at C6-C7. The open mouth view indicates the presence of degenerative facet joint arthrosis between C1 and C2 on the right. I see no traumatic changes. There is no discernible bone destruction.

*PAGEID* 921.

### **Mental Impairments**

Plaintiff was consultatively examined by Scott Donaldson, Ph.D., in November 2006 on behalf of the Bureau of Disability Determination ("BDD"). *PAGEID* 399-403. Plaintiff reported that she spoke on the phone, watched television, occasionally cooked, cleaned, laundered clothing and shopped for groceries. *PAGEID* 402. She reported adequate occupational and familial relationships, got along adequately with neighbors, clerks in stores or people in public agencies; she had a friend who visited regularly. *PAGEID* 399-401. She reported that she had been enrolled in a special education program. *PAGEID* 400. On mental status examination, Dr. Donaldson noted that plaintiff was cooperative; her presentation was anxious with a flat affect and agitated mood. *PAGEID* 400-02. Dr. Donaldson diagnosed a mood disorder and generalized anxiety disorder. *PAGEID* 402. According to Dr. Donaldson, plaintiff's ability to carry out one- or two-step job instructions may be weak, but not impaired; her ability to perform repetitive tasks might be mildly limited; her ability to attend to relevant stimuli was likely to be mildly impaired; her interpersonal relationship skills and ability to relate to supervisors and co-workers may be moderately limited; and her ability to withstand the stress and

pressures associated with day-to-day work activity appeared to be moderately limited. *PAGEID* 402-03.

Plaintiff was evaluated by Michelle Evans, Ph.D., and John Tilley, Psy.D., in December 2006 on referral from the Department of Job and Family Services. *PAGEID* 434-47. Plaintiff presented with a constricted affect and maintained poor eye contact during the evaluation. She reported flashbacks, auditory hallucinations and nightmares relating to previous assaults and tragedies. On testing, plaintiff achieved a verbal IQ score of 68, a performance IQ score of 70 and a full scale IQ of 66. *PAGEID* 440. Plaintiff was diagnosed with major depressive disorder, with psychotic features, post traumatic stress disorder, anxiety disorder and borderline intellectual functioning. Plaintiff was assessed a Global Assessment of Functioning score of 48.[3] *PAGEID* 445. The examining psychologists concluded that, from a purely psychological perspective, plaintiff was unemployable. *PAGEID* 447.

Dr. Tilley also completed a mental functional capacity evaluation. *PAGEID* 429-30. According to Dr. Tilley, plaintiff had marked limitations in her ability to maintain regular attendance and to be punctual within customary tolerances, to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Plaintiff would be extremely limited in her ability to work with others, to complete a normal workday or work week, to accept instructions and to respond appropriately to criticism from supervisors. *PAGEID* 429.

---

[3]Health care clinicians perform a Global Assessment of Functioning to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *Hash v. Commissioner of Social Sec.*, 309 Fed.Appx. 981, 988 n.1 (6th Cir. 2009); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34. A GAF of 45 describes a person with "serious symptoms ... or serious impairment in occupational, social, or school functioning." *Id.* at 34.

In March 2007, plaintiff complained of extreme anxiety and depression to Dr. Williams. *PAGEID* 475-76. Dr. Williams prescribed Citalopram and Buspar. *Id.*

Dr. Donaldson again consultatively evaluated plaintiff in October 2007. *PAGEID* 593-96. Plaintiff appeared to be agitated, intimidated and anxious about the process. *PAGEID* 593. Plaintiff's affect was flat and her mood was depressed; she demonstrated inadequate eye contact. When asked why she was disabled, plaintiff replied, "I've got tons of medication. I am depressed all the time. A tendon in my left arm is severed; I have staples in my arm and hand. My son is locked up. I have a lump on my breast and a tumor on my side." *Id.* Plaintiff reported that she dropped out of school in the ninth and that she had been enrolled in special education classes. *Id.* Plaintiff reported that she cooked, cleaned and went to a food pantry occasionally. *PAGEID* 595. Dr. Donaldson again diagnosed a major depressive disorder and generalized anxiety disorder. *PAGEID* 596. According to Dr. Donaldson, plaintiff's ability to understand, remember and carry out one- or two-step job instructions might be weak but not impaired. *PAGEID* 596. Her ability to perform repetitive tasks may be moderately limited by her medical status. *Id.* Her ability to attend to relevant stimuli may be moderately impaired; her interpersonal relationship skills, as well as her ability to relate to supervisors and co-workers, may be moderately limited; her ability to withstand the stress and pressures associated with day-to-day work activity was moderately limited. *PAGEID* 596.

In October 2007, Tonnie Hoyle, Psy.D., reviewed the record on behalf of the BDD and opined that plaintiff was moderately restricted in her activities of daily living and in maintaining concentration, persistence and pace, and that she had marked difficulties in maintaining social functioning. *PAGEID* 608. According to Dr. Hoyle, plaintiff could work if she were limited to

10

routine, one- to three-step tasks, could avoid stressful situations, including frequent changes, strict production standards, and frequent public contact, and if she were required to have no more than occasional and superficial social interaction. *PAGEID* 614. Another state agency psychologist, Irma Johnston, Psy.D., reviewed the evidence and affirmed Dr. Hoyle's assessment in May 2008. *PAGEID* 654.

Plaintiff saw Earl Greer, Ed.D., on two occasions: on October 29, 2009 for intake and on November 2, 2009 for therapy. *PAGEID* 908-09. She canceled her third appointment with Dr. Greer and failed to appear for her fourth appointment. *Id.*

### III.
### Administrative Decision

In her decision, the administrative law judge found that plaintiff's severe impairments consist of left shoulder tendinitis and supraspinatus tear, lacerated left second finger extensor tendon, status post surgery in July 2007 and March 2008, degenerative disc disease, asthma, affective disorder, anxiety disorder and borderline intellectual functioning. *PAGEID* 45. The administrative law judge found that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. *PAGEID* 47. According to the administrative law judge, plaintiff retains the residual functional capacity to:

> perform work involving lifting, carrying, pushing and/or pulling up to 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday. She can frequently balance. She can occasionally climb ramps/stairs, stoop, kneel, crouch and crawl. She cannot climb ladders/ropes/scaffolds or perform overhead work on the left. She is limited to work that does not require significant use of her left index finger. Regarding her mental residual functional capacity, the claimant is limited to low stress work which, in her case, is defined as simple routine tasks

>without frequent changes, strict production quotas or more than occasionally superficial contact with others. She is not otherwise functionally limited.

*PAGEID* 53. Although this residual functional capacity did not permit plaintiff to perform her past relevant work, *PAGEID* 59, the administrative law judge relied on the vocational expert's testimony to find that plaintiff is capable of performing other work that exists in significant numbers in the national economy despite her lessened capacity. *PAGEID* 60. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PAGEID* 61.

## V.
### DISCUSSION

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human*

*Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff presents two arguments. She contends, first, that the administrative law judge erred in her analysis of plaintiff's pain and, second, that the administrative law judge erred in her evaluation of the opinions of treating and examining physicians.

Plaintiff first complains that the administrative law judge failed to properly assess plaintiff's subjective complaints of pain. Subjective complaints of disabling pain must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230 (6th Cir. 1993). See also 42 U.S.C. §423(d)(5)(A). In evaluating subjective complaints of disabling pain, a court looks to the record to determine whether there is objective medical evidence of an underlying medical condition. If so, then, the court must determine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Stanley v. Secretary of Health and Human Services*, 29 F.3d 115, 117 (6th Cir. 1994) (quoting *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986).

An administrative law judge is not required to accept a claimant's subjective complaints, but may instead properly consider the credibility of a claimant. *See Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the administrative law judge has the opportunity to observe a witness' demeanor while testifying, her credibility determinations are accorded great

13

weight and deference. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, credibility determinations must be clearly explained. *Auer v. Secretary of Health and Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Beavers v. Secretary of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978). *See also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

      The administrative law judge in this case noted and followed the appropriate standards, performed the appropriate evaluation of the evidence and clearly articulated the bases of her credibility determinations. The administrative law judge devoted almost four pages to her consideration of plaintiff's subjective complaints, but found that those complaints were not fully credible. *PAGEID* 56-59. The analysis and the credibility determination of the administrative law judge enjoy substantial support in the record. The Court will not revisit that credibility determination. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

      Next, plaintiff contends that the administrative law judge failed to accord appropriate weight to the opinions of plaintiff's treating and examining physicians. The administrative law judge expressly rejected the extreme limitations reflected in the assessments by Dr. Williams:

> Consideration has been given to opinions expressed by treating physician Vernon Williams, M.D., on June 26, 2007 and May 6,2008. However, these opinions cannot be given any great weight for the same reasons as set forth by the BDD physician, . . . *i.e.*, lifting restrictions of two pounds and significant limitations in other exertional and non-exertional activities are simply not consistent with the totality of the medical evidence of record, to which Dr. Williams did not have access. It appears that the limitations set forth by Dr. Williams

> were based primarily on the claimant's subjective complaints, which, for the reasons stated . . . , cannot be found to be entitled to full credibility. It is noted that Dr. Williams is a family physician who, unlike the State Agency physicians, has no special expertise in reviewing an objective record and formulating an opinion as to medical severity and limitations stemming from impairments. It is of further note that Dr. Williams' two opinions are inconsistent with each other. For example, in his earlier opinion he stated that the claimant could sit for 40 minutes total in a workday and stand/walk for only 30 minutes total in a workday; however, in his more recent opinion, he stated that the claimant could sit for a total of four hours in a workday and stand/walk for a total of three hours in a workday. Dr. Williams did not explain, nor does the medical evidence document, any change in the claimant's condition to support these inconsistencies. Moreover, based on his two opinions, one would assume that there had been an improvement in the claimant's condition, which is contrary to the claimant's testimony.

*PAGEID* 55 (citation to record omitted).

In rejecting the opinion of a treating physician, an administrative law judge must give "good reasons" for the weight given to the opinion of that treating source. *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §416.927(d)(2).  In meeting this standard, the administrative law judge must consider certain factors, specifically "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source." *Id.* The administrative law judge's reasons must also be based on evidence in the record and "be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

In the case presently before the Court, the administrative law judge carefully considered the entire record and the reports and assessments of Dr. Williams, who offered no objective support for his opinions of disability. This Court concludes that the administrative law judge did not err in failing to accord controlling or even great weight to the residual functional capacity assessments articulated by Dr. Williams.

Similarly, the administrative law judge rejected Dr. Tilley's opinion, articulated following his consultative psychological examination of plaintiff, that plaintiff is unemployable, characterizing that opinion as "inconsistent with and unsupported by the evidence of record as a whole, including an analysis of the B and C criteria of Sections 12.04 and 12.06 of the Listings of Impairments." *PAGEID* 56. As the administrative law judge noted, Dr. Tilley's opinion appears to be based primarily on the subjective statements of the plaintiff, whose credibility the administrative law judge found to be wanting. *Id*. The administrative law judge also noted that plaintiff was not taking psychotropic medication at the time of Dr. Tilley's evaluation. *Id.*

In short, the Court concludes that the administrative law judge did not err in her evaluation of the opinions articulated by Dr. Williams and Dr. Tilley.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and*

*Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: July 6, 2012                                  s/Norah McCann King
                                                    Norah McCann King
                                                    United States Magistrate Judge

17